Thomas E. MELOON, Petitioner,
Appellee,

v.

Raymond A. HELGEMOE, Warden, New
Hampshire State Prison, et al.,
Respondents, Appellants.

No. 77–1197.

United States Court of Appeals,
First Circuit.

Argued Sept. 9, 1977.

Decided Oct. 31, 1977.

Peter W. Heed, Concord, N. H., with whom David H. Souter, Atty. Gen., Concord, N. H., was on brief, for appellants.

Eleanor Krasnow, Manchester, N. H., by appointment of the court, for appellee.

Before COFFIN, Chief Judge, TUTTLE,[*] Circuit Judge and WOLLENBERG,[**] District Judge.

COFFIN, Chief Judge.

Appellee, Thomas E. Meloon, was indicted and convicted under New Hampshire RSA 632:1 subd. I(c) in 1974 for the crime of "statutory rape". Meloon unsuccessfully appealed his conviction to the New Hampshire Supreme Court arguing among other issues that the New Hampshire statute violated the Fourteenth Amendment.[1] *State v. Meloon*, 116 N.H. 669, 366 A.2d 1176 (1976). In 1977 appellee filed a petition for a writ of habeas corpus with the United States District Court for the District of New Hampshire. The district court at first denied appellee's petition, but later reconsidered and granted the writ on the grounds that the statute under which appel-lee had been convicted violated the Equal Protection Clause. The state of New Hampshire appeals.

■ This case presents us with an unusual legal situation. New Hampshire has promulgated a gender based criminal law which makes it a felony for a male to have sexual intercourse with a consenting female under the age of 15, while it is not a crime of any kind for a woman to have normal sexual intercourse with a male under the age of 15.[2] All of the other New Hampshire laws regulating sexual behavior which were brought to the attention of this court, as they pertain to the conduct of consenting parties, are gender neutral and apply equally to men and women. Appellee states that RSA 632:1 subd. I(c) discriminates against males; there can be little question that it does so since only male perpetrators of the offense are punished and only female victims of the crime are protected. We must decide whether such a discriminating classification violates the Fourteenth Amendment. We conclude that it does and affirm the decision of the district court.

■ It has long been recognized that a state has vast discretion in developing classifications and categories in the exercise of its police power. Legislatures may decide that certain groups of individuals will suffer particular penalties and others will not. As the Supreme Court indicated in upholding a law permitting the commitment of a "psychopathic personality",

"The question, however, is whether the legislature could constitutionally make a class of the group it did select. That is, whether there is any rational basis for such a selection. We see no reason for doubt upon this point. Whether the leg-

---

[*] Of the Fifth Circuit, sitting by designation.

[**] Of the Northern District of California, sitting by designation.

1. The New Hampshire Supreme Court concluded that the classification in the statute was "reasonable and not constitutionally suspect". It is unclear what standard it used in making that evaluation. In explaining this conclusion the court simply stated that "The potential pregnancy of the female and the remote contin-gency of the older female seducing the under-age male with harmful results justify the legislative restriction of the crime to the male sex." *State v. Meloon*, 116 N.H. 669, 671, 366 A.2d 1176, 1177 (1976).

2. Unless otherwise specified, all references to New Hampshire law throughout this opinion refer to the statutes in effect at the time of appellee's conviction.

islature could have gone farther is not the question. The class it did select is identified by the state court in terms which clearly show that the persons within that class constitute a dangerous element in the community which the legislature in its discretion could put under appropriate control. As we have often said, the legislature is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. If the law 'presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.' *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78–79 [31 S.Ct. 337, 55 L.Ed. 369]; *Miller v. Wilson*, 236 U.S. 373, 384 [35 S.Ct. 342, 344, 59 L.Ed. 628]; *Semler v. Dental Examiners*, 294 U.S. 608, 610, 611 [55 S.Ct. 570, 79 L.Ed. 1086]; *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 400 [57 S.Ct. 578, 81 L.Ed. 703]." *Minnesota v. Probate Court*, 309 U.S. 270, 274–75, 60 S.Ct. 523, 84 L.Ed. 744 (1939). *See also Patsone v. Pennsylvania*, 232 U.S. 138, 144, 34 S.Ct. 281, 58 L.Ed. 539 (1914); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

■ The rational basis test described above is not appropriate for the constitutional evaluation of all criminal classification systems. Legislation which involves certain fundamental rights invites strict scrutiny, *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1941). Racial or "suspect" classification also require a compelling state interest to meet equal protection standards. Indeed, the Supreme Court has admonished that "with a racial classification embodied in a criminal statute . . . where the power of the State weighs most heavily upon the individual or the group, we must be especially sensitive to the policies of the Equal Protection Clause . . .", *McLaughlin v. Florida*, 379 U.S. 184, 192, 85 S.Ct. 283, 288–89, 13 L.Ed.2d 222 (1964).

■ The statute at issue in this case is a classification based on sex. As such it requires more heightened scrutiny than would be applied to completely non-suspect legislation, but less stringent scrutiny than is typically applied to racial classifications, *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). Moreover, since a criminal statute is involved, the standards governing gender classification must be applied with special sensitivity. In *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), the majority opinion evaluated a gender based state law with criminal implications under the rule that "classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." *Id.* at 197, 97 S.Ct. at 457. This is hardly a precise standard. Moreover, separate concurrences by Justice Powell and Justice Stevens make it unclear as to whether that standard has majority support. In brief we must decide the constitutionality of the New Hampshire statute under a test that to some indeterminate extent requires more of a connection between classification and governmental objective than that of the minimal rationality standard.[3] We do not believe the stat-

---

**3.** It is clear after the decision in *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764 (1973), that although four members of the Court favor including sex as a suspect classification, the majority does not accept such a doctrine. The resulting ambiguity as to the proper standard to apply to gender classifications was frankly discussed by Justice Powell in his concurrence in *Craig v. Boren*, 429 U.S. 190, 210 n. *, 97 S.Ct. at 464, "As is evident from our opinions, the Court has had difficulty in agreeing upon a standard of equal protection analysis that can be applied consistently to the wide variety of legislative classifications. There are valid reasons for dissatisfaction with the 'two-tier' approach that has been prominent in the Court's decisions in the past decade. Although viewed by many as a result-oriented substitute for more critical analysis, that approach—with its narrowly limited 'upper-tier'—now has substantial precedential support. As has been true of *Reed* and its progeny, our decision today will be viewed by some as a 'middle-tier' approach. While I would not endorse that characterization and would not welcome a further subdividing of equal protection analysis, candor com-

ute before us can withstand any such "fair and substantial relation" test. *Reed v. Reed, supra,* 404 U.S. at 71, 92 S.Ct. 251.

New Hampshire suggests four "reasons" for its classification scheme: (1) part of the class of males under the age of 15, pre-pubescent males, are physiologically incapable of becoming victims of this consensual offense; therefore the class of victims vulnerable to women offenders is smaller than the class of victims vulnerable to male offenders; (2) adult males, due to a psychological disorder known as pedophilia or otherwise, are more likely to seek to commit the offense than adult women; therefore the

class of potential male offenders is larger than the class of potential women offenders; (3) female children are more likely to suffer physical damage during the commission of the offense than are male children; thus the class of female victims is in danger of more severe injury than their male counterparts; (4) only female victims may become pregnant; thus again the class of female victims may suffer more severe repercussions from the offense than will their male counterparts.[4]

The state also noted in its brief that the general object of the legislation was "the protection of children from exploitation

---

pels the recognition that the relatively deferential 'rational basis' standard of review normally applied takes on a sharper focus when we address a gender-based classification. So much is clear from our recent cases."

4. The state contends that there is overwhelming support for the constitutionality of statutory rape laws and cites twelve cases to establish that proposition. We do not find the authority of these cases so persuasive that they require us to reverse the judgment of the district court. While mindful of these decisions, we believe they are sufficiently distinguishable to put us to the task of independently analyzing the particular statute before us under the current doctrine of the Supreme Court.

Five of the cases New Hampshire cites, *Brooks v. Maryland,* 24 Md.App. 334, 330 A.2d 670 (1975); *State v. Price,* 215 Kan. 718, 529 P.2d 85 (1974); *People v. Gould,* 188 Colo. 113, 532 P.2d 953 (1975); *Finley v. State,* 527 S.W.2d 553 (Tex.Crim.App.1975); and *People v. Medrano,* 24 Ill.App.3d 429, 321 N.E.2d 97 (1974), are exclusively concerned with acts of forcible rape and are inapposite to the present case. We emphasize, as did the district court below, that our analysis is predicated on the consensual nature of the crime committed by appellee.

Three other cases, although involving convictions under statutory rape laws, are distinguishable from the present case in that the offensive conduct included the use of force. It is not unlikely that a court's reasoning on this issue would be colored by the fact that an actual rape had occurred as opposed to the statutory consensual offense. *See In re Interest of J. D. G.,* 498 S.W.2d 786, 793 (Missouri 1973). Moreover, in one of these cases the appellate court did not feel it was required to evaluate thoroughly the defendant's constitutional claim since he had failed to raise it at trial and it was not such an obvious and blatant constitutional violation that the trial court should have been expected to rule on it *sua*

*sponte.* *In the Matter of W. E. P.,* 318 A.2d 286 (D.C.App.1974). The third case, *State v. Drake,* 219 N.W.2d 492 (Iowa 1974), involved a statute which only punished the sexual act if performed by a male over the age of 25 with a woman under the age of 17. Not only does this age disparity significantly affect the purposes for which such a statute might be enacted but the high age of the potential female victim lends greater credence to a pregnancy prevention rationale.

Of the four remaining cases cited by the state, one, *Flores v. State,* 69 Wisc.2d 509, 230 N.W.2d 637 (1975), was specifically decided under the minimal rationality standard; its holding is therefore of limited relevance. Another, *People v. Green,* 183 Colo. 25, 514 P.2d 769 (1973), held that the statutory scheme challenged by defendant (which did involve a penalty for women having intercourse with under age males although a potentially lesser penalty than that which could be inflicted on comparable male offenders) was not a classification based solely on sex, but rather involved a variety of non-sexual factors. There is no question that the New Hampshire statute here involves a classification based solely on gender. *People v. Mackey,* 46 Cal.App.3d 755, 120 Cal.Rptr. 157 (1975) and *State v. Elmore,* 24 Or.App. 651, 546 P.2d 1117 (1976), were both decided before the Supreme Court's decision in *Craig v. Boren.* *Elmore* recognized that gender classifications had been held to require some form of close scrutiny in the context of employment discrimination, but concluded that gender based criminal statutes should be evaluated under a lower level of scrutiny. We suggest, if there is any difference, the reverse is true. *Mackey* devotes one sentence of analysis to the equal protection question before it and upholds the statutory rape law because "it would be unrealistic" to think that young girls are no more likely than young boys to attract adults on the prowl for sexual partners. We are not persuaded.

through the act of sexual intercourse." What the state has failed to indicate, however, is how these "reasons" connect the statutory classification to its specified objective. Before examining any of these justifications on the merits we must probe further to determine exactly what the state is trying to tell us as to why its law withstands constitutional scrutiny. Why, we must ask, does the difference in sex between persons who have sexual intercourse with persons under 15 "warrant the distinction" in penalties imposed by state law. *See Stanton v. Stanton*, 421 U.S. 7, 14, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975).

▮ The state's first two "reasons" relate to the size of the victim and offender class. If one assumes that all else was equal, simply hinging the criminal sanction to the indeterminate differences in the size of these classes need not further the objective of protecting children from exploitation. Under a minimal rationality test the state's suggestion that there are more potential offenders in the class of males than the class of females would suffice. But under the stricter scrutiny required for classifications by gender, the state should be obliged to make some showing that by concentrating its enforcement resources on the gender class with more potential offenders and ignoring the rest of the population altogether, it is likely to achieve some greater measure of protection for its children than a gender neutral law would achieve. Similarly, the state should make some showing that by exclusively protecting a class disproportionately vulnerable to attack and offering no protection whatsoever to the other gender, it is maximizing its overall objective of protecting all children from exploitation by the means of sexual intercourse. The state has made no such showing. Indeed, its very premises are open to serious question.

The state's contention as to the limited number of potential victims in the class of males under 15 is not only unsupported by any evidence but seems inconsistent with

the face of the statute. Obviously pre-pubescent boys are incapable of achieving the degree of sexual penetration normally associated with adult intercourse. However, the New Hampshire statute specifically denotes that it applies to sexual contact involving "any penetration, however slight", New Hampshire RSA 632:1, subd. II. There is no reason to believe that the degree of penetration necessary to achieve the statutory offense could not be successfully accomplished by pre-pubescent children. *See generally* Model Penal Code, § 207.4, Comment (3) (Tent. Draft No. 4, 1956); *State v. Kidwell*, 27 Ariz.App. 466, 556 P.2d 20 (1976). As far as can be determined from the evidence before this court the number of potential victims in the class of males under 15 may include the great majority of the class members.

The state's second justification concerning the greater number of potential offenders in the class of males also raises difficult problems. Even if we assume arguendo that there is a group of males suffering from a mental disorder known as pedophilia and that the definitive symptom of that illness is an erotic attraction to children, this tells very little about the utility of the state's classification scheme. We are not told how prevalent the disease is in the normal male population, nor even what percentage of statutory offenders suffer from the malady. Moreover, the state gives us no indication whether there are any neurotic conditions which would influence adult women to seek out male sexual partners under the age of 15.[5] In *Craig v. Boren, supra*, the Court rejected Oklahoma's contention that because ten times as many males in the 18–20 age group were arrested for drunken driving as were women in the same age group (2 percent of the men and .18 percent of the women), its gender based criminal statute withstood unconstitutional scrutiny. Here New Hampshire informs the court only that some unspecified percentage of an already small deviant

---

**5.** As for any normal proclivity of adults for sexual partners under the age of 15, the state presents no evidence or rationale for its asser-

tion that such inclinations are disproportionately experienced by males.

class of potential statutory offenders suffers from a malady that is allegedly exclusively male. We cannot reconcile such a justification with the Court's decision in *Craig.*

New Hampshire's third and fourth reasons in support of its statutory scheme relate to its objectives in enacting a statutory rape law. Although its general objective is to prevent the sexual exploitation of children through the act of sexual intercourse, the state argues that within that overall goal it has particular concerns—the prevention of physical injury resulting from the act and the prevention of the pregnancy of the under age partner. Both these concerns, New Hampshire contends, are reasonably reflected by a gender based law.

We examine the pregnancy prevention rationale with special wariness. Certainly the fact that women and not men bear children is a fundamental distinguishing characteristic of the two sexes and as such it can be the basis for some gender based legislation; but there is a danger that the very uniqueness of this characteristic makes it an available hindsight catchall rationalization for laws that were promulgated with totally different purposes in mind. New Hampshire presents us with not an iota of testimony or evidence that the prevention of pregnancy was a purpose of its statutory rape law. Indeed, all the inferences that may be drawn from the materials presented to us are to the contrary.[6]

New Hampshire points out that its statute was heavily influenced by the Model Penal Code, but the Code's statutory rape provision only protected female children under the age of ten for whom pregnancy could not have been a serious threat. Moreover, the state repeatedly refers to the long history of statutory rape legislation in Europe and the United States and the continu-

ity of "the thrust of the crime". Yet the state admits that over the last 100 years the age which defines the defense has varied from ten to thirteen to sixteen to fifteen and finally back to thirteen. Without some concrete indication from the state as to the reasons behind these changes we cannot believe that such disregard for whether or not some or any of the class of females protected are of child bearing age is reconcilable with a pregnancy prevention rationale. We also note that New Hampshire's other laws governing sexual conduct seem inconsistent with the purposes asserted here. RSA 632:4 makes it a felony for any person (male or female) 17 years of age or older to have normal or deviant sexual intercourse with any person over 14 and less than 17 years of age. There is no question that the female victim class in this statute includes far more pregnable members than does the class of children under the age of 15. Yet in RSA 632:4 the state did not find it necessary to use gender based legislation *in order to prevent the pregnancy of its minors.* Finally, we note that the current New Hampshire statutory rape law is gender neutral and sets the age limit at 13. This change from the 15 years of age limit in effect when appellee was convicted, made without any reference to its effect on the goal of preventing pregnancy, makes little sense if the prevention of pregnancy goal and the necessity for a gender based law to enforce it was of concern to the legislature.

■ The state's attorney is entitled to due deference in regard to his allegations as to his state's rationale for particular legislation, but that deference is not without limit. In *Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), Justice Stevens noted in his concurrence, "a rule which effects an unequal distribution of

---

**6.** The district court below pointed out that "penetration, however slight, is all that is necessary for the crime and that emission is not required", and that the state "does not allow as a defense the use of contraceptives or birth control methods" in reaching its conclusion that the pregnancy prevention rationale could not withstand careful scrutiny. It is conceiva-

ble to us that a state could have intended to prevent any possible *risk* of pregnancy by prohibiting even sexual behavior that is unlikely to result in conception. However, we do not see how one could infer a pregnancy prevention rationale from a statutory scheme that included the above conditions.

economic benefits solely on the basis of sex is sufficiently questionable that 'due process requires that there be a legitimate basis for presuming that the rule was actually intended to serve [the] interest' put forward by the government as its justification. *See Hampton v. Mow Sun Wong*, 426 U.S. 88, 103, [95 S.Ct. 1225, 43 L.Ed.2d 514]." *See also Weinberger v. Weisenfeld*, 420 U.S. 636, 648 n. 16 (1975). Certainly in a criminal context we may view the government's rationale with at least as healthy a degree of skepticism. The pregnancy prevention rationale cannot withstand such scrutiny in this case.[7]

New Hampshire's final rationale is based on the potential for physical damage to young female children from intercourse which does not exist for their male counterparts. We do not understand New Hampshire to argue that this form of injury is the exclusive danger (pregnancy aside) which its statute is designed to mitigate. Nor do we understand it to allege that this form of injury is more severe or more prevalent than the psychic trauma usually associated with adult sexual contact with young children.[8] The contention is simply that there is one potential form of injury resulting from the offense to which only the class of females is susceptible. It is clear that the statute and its classification scheme cover a far larger class than this justification would

warrant. There is little in the scenario of an adolescent love tryst of a 16 year old boy and a 14 year old girl (a clear violation of the statute) which invokes the likelihood of physical danger. Moreover, the state has given us no sense of how common an occurrence this form of injury is even for the adult-child scenario, particularly in light of the "penetration, however slight" definition of the offense. Given this lack of precision we are hard put to accept as "fair and substantial" the connection between (1) the fact that one subclass of one gender class of victims has some indeterminate likelihood of suffering an additional injury to which the other gender class is not susceptible and (2) the state's statutory scheme which penalizes only one gender exclusively and protects the other gender exclusively.

In conclusion we should compare our overall analysis with that of *Craig v. Boren, supra,* the most analogous Supreme Court case toward which we may turn for guidance. The present case involves a far more serious criminal penalty than did *Craig* and consequently a far greater legal differential between men and women (in fact, members of either sex could have been liable for criminal penalty under the Oklahoma statute in *Craig*). In *Craig* the unrestricted class, women in Oklahoma between 18 and 20 years of age, experienced a condoned freedom not available to men of the same

---

**7.** It is suggested that the prevention of pregnancy rationale is itself constitutionally unacceptable to the extent that it penalizes only the potential father for a consensual act the consequences of which, pregnancy, are clearly the responsibility of both parties. *See Commonwealth v. MacKenzie,* 334 N.E.2d 613 (Mass. 1975) (holding father but not mother criminally responsible for birth of illegitimate child violates equal protection). While there may be merit in such an analysis, we do not find it necessary to decide that issue.

**8.** It is interesting to note that in its brief to the New Hampshire Supreme Court at the time Meloon appealed his conviction, New Hampshire emphasized the emotional and social aspects of the problem, making only one unexplained reference to physical exploitation. The state argued, "[S]ociety has a rational and even a compelling interest in protecting female chil-

dren from physical, emotional and psychological exploitation by males. Special treatment of consensual intercourse with a female child is warranted not only because the emotionally immature require protection and to prevent the outrage of parental and community feelings, but also because an adult male's proclivity for sex relations with female children is a recognized symptom of mental aberration, called pedophilia . . . .. Besides protecting those most vulnerable from the 'machinations of seducers', society has a rational interest in protecting social mores and institutions such as the family which are the mainstay of our social fabric. Ultimately, the simple fact that the female may become pregnant and the male cannot is reason enough to supply the required rational basis." Brief of the state of New Hampshire, p. 28, filed with the New Hampshire Supreme Court in case No. 7342.

age, the right to drink 3.2 percent beer. Presumably the state had some interest in not unnecessarily restricting the drinking habits of its citizenry. In the present case we do not understand New Hampshire to condone in any way the freedom of adult women to have intercourse with males under the age of 15 nor do we understand it to have any interest in maintaining the freedom of its women to do so. Finally, the Oklahoma statutory scheme in *Craig* did not have the mirror image effect we have here, that by only penalizing one gender of offenders, males, for committing a heterosexual offense, the state necessarily leaves the potential victims of that offense of the same gender, young males, without protection. Given these circumstances and the holding in *Craig*, we must hold New Hampshire's law up to at least comparable scrutiny. That scrutiny at a minimum requires that the actual and constitutionally acceptable objectives of New Hampshire's law be substantially furthered in fact and reason by the divergent treatment that law extends to the different sexes. New Hampshire's statutory rape law does not do so.

We want to take care to indicate the limited nature of our holding. We have found only one particular statutory rape law to be unconstitutional. We have not reflected on nor do we intend to question the constitutionality of the laws of other states. We express no opinion as to whether on a different record some other statute would pass constitutional scrutiny.

*Affirmed.*