**Jimmy KRUGER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60696.**

Court of Criminal Appeals of Texas, Panel No. 2.

Oct. 28, 1981.

Michael W. George, William L. Smith, Jr., Denton, for appellant.

Jerry W. Cobb, County Atty., and David Bays, Asst. County Atty., Denton, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and TOM G. DAVIS and CLINTON, JJ.

OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for rape of a child, where the punishment was assessed by the jury at ten (10) years' imprisonment and a fine of $5,000.00, probated.

On appeal appellant's sole ground of error is the conviction is based upon V.T.C.A., Penal Code, § 21.09, which statute is unconstitutional in that it invidiously discriminates against males in violation of the Fourteenth Amendment, United States Constitution, and Article I, § 3a of the Texas Constitution.

This same contention was raised in and answered adversely to appellant's argument

in *Ex parte Groves*, 571 S.W.2d 888 (Tex.Cr. App.1978). We adhere to *Groves*.

The judgment is affirmed.

CLINTON, Judge, dissenting.

Well aware that it is presumptuous of me to urge that the present condition of judicial gloss, only recently applied to a statute by the Court, be examined for defects, I do so in light of intervening developments and other reflections.[1]

The offense as in *Groves*, cited in the margin, is "rape of a child,"[2] commonly called "statutory rape." When a female and a male, neither being married, willfully assume the missionary position and engage in the physical acts that constitute consensual sexual intercourse, is either committing a penal offense against the laws of the State of Texas? The answer: It all depends on how one reads the law.

V.T.C.A. Penal Code, § 21.09 first provides:

"(a) A person commits an offense if he has sexual intercourse with a female not his wife and she is younger than 17 years."

That language seems simple enough—a man offends the law when he engages in even consensual sexual intercourse with a woman who has not yet attained her seventeenth birthday.[3] Thus, translated into more traditional terms, 17 is the age of consent for a female,[4] according to this legislative expression in § 21.09(a).[5] *Ex parte Davila*, 530 S.W.2d 543 (Tex.Cr.App. 1975). And, under the former penal code,

---

1. In *Ex parte Groves*, 571 S.W.2d 888 (Tex.Cr. App.1978), the Court derived from the "gender" provision of our Code Construction Act an interpretation that "makes it a second degree felony for any person to have 'sexual intercourse with a *male* not *her husband* and *he* is younger than 17 years'." (Emphasis in original.) From that interpretation the *Groves* Court professed the belief "that the Legislature intended to protect both male and female *victims* of rape," and so held. Therefore, concluded the Court in *Groves*, "Under our interpretation there can be no possible violation of equal protection of the laws under Sec. 21.09 on the basis of sex." Aside from the observation that one who freely consents to and willingly participates in normal sexual intercourse is not likely to perceive his own status in normal sexual intercourse as a "victim[ ] of rape," we note that a similar construction of California's statutory rape law was recently urged upon the Supreme Court in *Michael M. v. Superior Court of Somona County*, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981), as a manner of construing that statute in order to uphold it. The Supreme Court, however, rejected the notion because such a broad statute "may well be incapable of enforcement," 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437. Not only that, the writer cannot agree with the *Groves* formulation since I see it as doubly compounding the mischief inherent in the statute itself by making *both* consensual participants in the single sex act susceptible to criminal prosecution for what surely is the ultimate "victimless crime."

2. In the instant case, the sole question being whether the statute underlying the prosecution is constitutional, the thin record reveals only that the *"child"* is younger than 17 years. (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

3. See *Phillips v. State*, 588 S.W.2d 378, 380 (Tex.Cr.App.1979), construing "14 years of age or younger" to mean one who has not reached his fifteenth birthday.

4. See Practice Commentary: "The female legally incapable of consenting to sexual intercourse is the subject of the offense created by this section..."

5. That there even is an age at which a female is considered incapable of consenting to sexual intercourse, was probably first laid down by Statute of Westminster I, 3 Edward I chapter 13, since under the preceding common law "it was not rape to have sexual intercourse with a female child, however young, if she consented," 75 C.J.S. 477, Rape, § 13 "Female Under Age of Consent." A later statute, enacted during the reign of Queen Elizabeth as may have been expected, "made all sexual intercourse with females under ten years of age punishable, whether the act was with or without their consent," *id.* at 478. Blackstone, Book 4, c. 15, p. 212, wrote of "the *abominable wickedness* of carnally knowing and abusing any woman child under the age of ten years," pointing out that consent is immaterial "as by reason of her tender years she is incapable of judgment and discretion," (as quoted by the Court in *State v. Rimmer*, 129 Tenn. 383, 164 S.W. 1148, 1149 (1914). The common law age of consent has been modified usually upward from time to time by legislative specification of what was deemed the appropriate number of years, in nearly all jurisdictions in this country, 75 C.J.S. 478, as well as in this State, see Practice Commentary under heading "Age of Consent."

Article 1183,[6] P.C. 1925, the offense was complete with or without the consent of a female under 18 years of age. *Purifoy v. State*, 163 Tex.Cr.R. 488, 293 S.W.2d 663, 664 (1956) and cases cited therein.

Thus, the Legislature appears to have enacted a facially gender based criminal law which makes it a felony of the second degree for a male to have sexual intercourse with a consenting teenager female. Only by judicial construction may it be said to be a crime for a woman to have normal sexual intercourse with a male younger than 17 years—just as *Groves* did.

It is a defense to prosecution that the female participant is at least 14 years old and promiscuous in her sexual activity, § 21.09(b).[7] It is an affirmative defense to prosecution that the difference in ages of the participants is not more than two years;[8] that is, that in what may be a completely consensual encounter whomever is considered the "actor"—now "suspect"[9] —was not more than two years older than whomever is designated the "victim."[10]

(While there is no legislative recognition given to the situation where the suspect is even younger than the victim, presumably that fact may be presented as an affirmative defense.)

Reflecting on the whole statute as written, one easily discerns that after the promiscuous teenagers and trysting adolescent lovers are excused what violators remain will seldom be identified so long as the *Groves* construction is extant, for a sexual participant runs the risk of being considered a suspect rather than a victim. It is that very feature that representatives of the State of California pointed to in persuading the Supreme Court of the United States "that a gender-neutral statute would frustrate its interest in effective enforcement." That is, "a female is surely less likely to report violations of the statute if she herself would be subject to criminal prosecution," *Michael M. v. Superior Court*, supra, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437.[11] For that reason alone the

---

**6.** "Rape is . . . the carnal knowledge of a female under the age of eighteen years other than the wife of person with or without her consent and with or without the use of force, threats or fraud; provided that if she is fifteen years of age or over the defendant may show in consent cases she was not of previous chaste character as a defense." A "chaste woman" meant an unmarried woman who "has had no carnal knowledge of men," *New v. State*, 141 Tex. Cr.R. 536, 148 S.W. 1099, 1101 (1941), one approval of the definition being *Norman v. State*, 89 Tex.Cr.R. 330, 230 S.W. 991 (1921). And *Norman*, in turn, explains, "The statute of this state in question was manifestly framed to preserve the purity of females under 18 years of age and to refrain from punishment for rape of one having intercourse with a female over 15 years of age whom the evidence showed to be unchaste at the time the alleged offense was committed," *id.* at 933.

**7.** "(b) It is defense to prosecution under this section that the female was at the time of the alleged offense 14 years or older and had, prior to the time of the alleged offense, engaged promiscuously in sexual intercourse or deviate sexual intercourse."
Under *Groves* "female" may be read as "male" and *his* promiscuity shown. It is also interesting to note that in the legislative session immediately following enactment of the penal code, the preexisting family code was amended in several respects by Acts 1975, 64th Leg., p.

620, ch. 254 so as to lower the age of persons to whom a marriage license may be issued from 16 to 14, upon parental consent or waiver by court order, see V.T.C.A. Family Code, §§ 1.07, 1.51, 1.52 and 1.53.

**8.** "(c) It is an affirmative defense to prosecution under this section that the actor was not more than two years older than the victim."

**9.** As amended, V.T.C.A. Penal Code, § 1.07(a)(2) "actor" means "suspect," and that one is the person "whose criminal responsibility is in issue in a criminal action."

**10.** We are given to understand by the Practice Commentary that this two-year age differential is a legislative nod of recognition to what the court in *Meloon v. Helgemoe*, 564 F.2d 602 (CA 1, 1977) characterized as "the scenario of an adolescent love tryst" of teenagers, *id.*, at 608, in which there truly is not an immediate victim.

**11.** With respect to the contention of petitioner Michael M. that "a gender-neutral statute would not hinder prosecutions because the prosecutor could take into account the relative burdens on females and males and generally prosecute only males," Justice Rehnquist, writing the plurality opinion, rejoined, "But to concede this is to concede all. If the prosecutor, in exercising discretion, will virtually always

*Groves* reading of the statute should be reexamined. This Court might formulate some theory to uphold it—as a majority of the Supreme Court did in *Michael M.*, supra, while not agreeing on what it was [12]—although in my view § 21.09 is nothing more than a script for a morality play that government has no business producing.

Irrationality of § 21.09 is evident—and I mean that in the "liberty" sense of Due Process and Due Course of Law, rather under some Equal Protection doctrine.

To hold one teenager criminally responsible for participating in a consensual act of normal sexual intercourse on grounds that the other willingly participating teenager is legally barred by artificially determined number of years of age from consenting to do what that one is freely doing is manifestly arbitrary. To say that it is rendered less capricious by allowing an escape from criminal responsibility when the consent-barred participant is demonstrably promiscuous or is within two years of the age of the accused only undermines a given premise of the legislation—if, contrary to historical fact,[13] prevention of illegitimate pregnancy is, indeed, the idea.

prosecute just the man and not the woman, we do not see why it is impermissible for the legislature to enact a statute to the same effect," *id.*, n. 9.

**12.** A plurality opinion, a concurring opinion and an opinion concurring in the judgment make up a majority of five Justices, but each opinion articulates its own view of the matter, as Justice Brennan points out in note 2 of his dissenting opinion, 28 CrL at 3128. Still the central question and holding are as stated in the plurality opinion, *viz*:

"The question thus boils down to whether a State may attack the problem of sexual intercourse and teenage pregnancy by prohibiting a male from having sexual intercourse with a minor female. We hold that such a statute is sufficiently related to the State's objectives to pass constitutional muster."

28 CrL at 3123. This, of course, echoes the "mid-level" constitutional scrutiny mandated by *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976): A gender-based classification must bear a "substantial relationship" to "important governmental objectives." The important objective of the California statute was "the prevention of illegitimate pregnancy," and it was found that the State had "a strong interest" in preventing that.

**13.** At the outset in Texas, the concern was not with preventing pregnancy. Faithful to the Elizabethan law in England, the age of consent was fixed at ten years by the Act of August 28, 1856, Articles 523–530, Oldham & White, Penal Code 523; punishment for rape committed by a white male was from five to fifteen years, but was death when a slave or "free person of color" raped a white woman, Act of February 12, 1858, Articles 819, 823, Oldham & White 561, 562. During the first year of Reconstruction, the Act of November 10, 1866, 5 Gammel's Laws of Texas 1079, increased the punishment for "whoever" committed the offense of rape to death or by confinement for life or any term of years not less than five; but age of consent remained at ten years through the Penal Code of 1879, Article 528, and the Act of February 25, 1887, 9 Gammel's 805, until, first, Acts 1891, p. 96 raised it to twelve and then Acts 1895, p. 79 put it at fifteen. Whatever the explanation for the two stepups in the 1890's—and I have found none—it is noteworthy that at least from Acts 1866, p. 72, the age at which females were permitted to marry was fourteen. Thus, toward the end of the century the age of consent and the age of puberty were somewhat related.

The age of consent remained at fifteen through the 1911 Penal Code, Article 1063 until the troubled times of World War I. Then by Acts 1918, 4th C.S., p. 123, Article 1063 was amended to hike the age of consent to eighteen and, for the first time, to provide the defense to statutory rape "in consent cases" when the female was fifteen years of age or over that she "was not of previous chaste character." That "the present law defining rape does not furnish adequate protection to the young girls of this State" created an emergency, said the Legislature. Thus, raison d'etre was established— "the preservation of the purity of womanhood," *Cloninger v. State*, 91 Tex.Cr.R. 143, 237 S.W. 288, 292 (1922); *Norman v. State*, 89 Tex.Cr.R. 330, 230 S.W. 991, 993 (1921). The Court in *Cloninger* quoted approvingly at length from the opinion in *State v. Dacke*, 59 Wash. 238, 109 P. 1050, 30 L.R.A.(N.S.) 173, which delineated the meaning of the term "of previously chaste character," stating in part, "The test of virtue in a woman is a personal and physical test, and when, by reason of her voluntary sin, she has lost her virginal purity, it matters not who contributed to that loss; she is no longer chaste."

Accordingly, the *Cloninger* Court answered affirmatively the question it posed, "Would her prior act or acts of intercourse with appellant render her unchaste within the meaning of the law now under consideration?" Therefore, wrote the Court, "When we determine at what

The defense of promiscuity negates the idea. So does the affirmative defense of a two-year age differential, for the wide range thus fenced off—I am unable to perceive a minimum age for the participating female—admits sexual gamboling by pairs of contemporary teenagers that is most likely to result in pregnancy. Indeed, the very design of the age differential is, we are told by the Practice Commentary, "to exclude from the talons of the criminal law children in the same age bracket." Thus, unlike California's law, here there is sure indication that the intent and purpose of § 21.09 is *not* to discourage consensual sexual intercourse between the very peers whose immaturity and inexperience lead to the consequence of pregnancy. See statistics discussed by the plurality opinion in *Michael M.*, supra, 28 CrL 3123, ns. 3 and 5.

"[T]he objective of the incapable-of-consent offense," states the Practice Commentary, "is to prevent imposition by the older and presumably more experienced," to focus "on the true offender, he who takes advantage of a child's immaturity." Yet, while not invariably so, a cursory examination of cases annotated to § 21.09 reveals that it is, and its predecessor was, often utilized by the prosecuting attorney to upgrade what is really incest,[14] a felony of the third degree, to the second degree felony of statutory rape. Illustrative are the stepfather in *Groves*, this day decided on appeal; the adoptive father in *McKinney v. State*, 505 S.W.2d 536 (Tex.Cr.App.1974); the stepfather in Cause No. 47,896 in *Carter v. State*, 506 S.W.2d 876, 879 (Tex.Cr.App. 1974) and also in *Seaton v. State*, 564 S.W.2d 721, 723 (Tex.Cr.App.1978); appar-

ently the father in *Ex parte Smith*, 571 S.W.2d 22 (Tex.Cr.App.1978). Thus, the statute still retains that moralistic character bestowed by the Legislature in 1918.

Normal sexual intercourse surely is one of the most intimate acts engaged in by consenting couples. *Any* attempt by government to regulate such interpersonal conduct directly implicates that aspect of the "liberty" protected by the Due Process Clause of the Fourteenth Amendment and by the Due Course Clause of Article I, § 19 of our own Bill of Rights now recognized as "a right of personal privacy, or a guarantee of certain areas or zones of privacy," *Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973), which "includes 'the interest in independence in making certain kinds of important decisions.' *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876–877, 51 L.Ed.2d 64 (1977)," *Carey v. Population Services International*, 431 U.S. 678, 684, 97 S.Ct. 2010, 2015, 52 L.Ed.2d 675 (1977); *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). "State restrictions inhibiting privacy rights of minors are valid only if they serve 'any significant state interest… that is not present in the case of an adult'," *id.*, 431 U.S. at 693, 97 S.Ct. at 2020. While the Supreme Court has assumed that the Constitution does not bar state regulation of sexual behavior of minors, still it critically examines assertions that a related regulation serves significant state interests in discouraging early sexual behavior, *id.*, at 694 n. 17 and 695–696, 97 S.Ct. at 2021 n. 17 and 2022, and looks for "supporting evidence" to justify the assertion, *id.*, at 696, 97 S.Ct. at 2022.

time an unmarried woman becomes 'unchaste' then the controlling question in this case is settled." In *Coots v. State*, 110 Tex.Cr.R. 105, 7 S.W.2d 539 (1928) the prosecutrix was found unchaste when she had consensual intercourse with appellant because she had just "a few minutes" before copulated with his companion, one Alexander, for the Court stated the law to be that "only the first act of intercourse can amount to rape where the female is over 15 years of age and consents to such act," *id.*, at 540.

In *Norman v. State*, supra, the Court had held it was error for the trial court "to preclude

the use of evidence of unchaste conduct of the prosecutrix prior to her attaining the age of 15 years as going to establish her unchastity," *id.*, 230 S.W. at 993. See also *New v. State*, 141 Tex.Cr.R. 536, 148 S.W.2d 1099, 1101 (1941).

The statute itself and the expressed understandings of the Court clearly manifest the purpose of the Legislature in 1918, and § 21.09 reflects the same objective.

14. V.T.C.A. Penal Code, § 25.02 proscribes sexual intercourse by one with, e. g., his descendant by blood or adoption, his stepchild and his niece.

In the case at bar the State does not even assert any significant interest, content merely to cite and rely only on *Ex parte Groves*, supra, in its halfpage "Argument and Authorities." Since I would reexamine *Groves*, the State's expressed position is not helpful, but it might be shored up if given another opportunity.

Accordingly, I would determine to address *Ex parte Groves* again and order the parties to submit fresh briefs directed to both Equal Protection and Due Process issues that appear in the case. Because the majority does otherwise, I respectfully dissent.