## BOYD RAYMOND BROOKS, JR. *v.* STATE OF MARYLAND

[No. 331, September Term, 1974.]

*Decided January 16, 1975.*

336

The cause was argued before POWERS, GILBERT and LOWE, JJ.

*Stephen A. Tarrant, Assigned Public Defender,* for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Edwin H. W. Harlan, Jr., State's Attorney for Harford County, Peter C. Cobb* and *John A. Goodman, Assistant State's Attorneys for Harford County,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

The prosecuting witness, a girl of twenty-one years, was ravished by an apparent sadist who entered her automobile at the point of a gun. In the face of a knife brandished by

him as she drove, she submitted to his instructions. After raping her thrice, he forced her out of the car, bent her over its trunk and committed three acts of sodomy. She was then forced to her knees by his hands on her shoulders and around her throat. She was forced to commit fellatio, whereupon she lapsed into unconsciousness — thankfully, notwithstanding she was choked into that oblivious state.

When she awoke she was face down on the ground, in great pain and hardly able to swallow. What clothes there were remaining on her had been cut, ripped and violently disheveled. Her pierced earrings were missing and a pendent she had been wearing was subsequently found tangled in her hair. Her neck, head and body were a mass of bruises, cuts and abrasions. ". . . I lay there on the ground because I couldn't stand up. I felt like somebody had jumped up and down on my back. My whole body ached. I laid there and I was like whining." She subsequently found that a large "X" had been carved into her forehead.

A jury presided over by Judge Albert P. Close of the Circuit Court for Harford County, convicted Boyd Raymond Brooks, Jr. of rape, kidnapping, assault with intent to maim, and assault and battery. The consecutive sentences imposed by Judge Close totalled 80 years imprisonment. Appellant appealed. We affirm.

## Equal Protection

Appellant first claims that the rape statute, Md. Code, Art. 27, § 461, denies him equal protection of the law in violation of the Fourteenth Amendment of the Constitution of the United States and abridges his equality of rights because of sex, Article 46 of the Declaration of Rights of the Maryland Constitution.

Although appellant questions the constitutionality of the rape "statute," the statute itself simply establishes the penalty for the common law crime of rape. We will nonetheless accept appellant's general proposition that judicial interpretation has treated rape as a masculine crime. Other than as a principal in the second degree, Clark

and Marshall, *Crimes*, (7th ed.), § 8.10; *cf.*, *Mumford v. State*, 19 Md. App. 640, a female can only be the victim of rape, not the perpetrator. This is true notwithstanding the penalty statute's use of the term "person" without distinction as to sex. *Hazel v. State*, 221 Md. 464.

As the Supreme Court pointed out in *Reed v. Reed*, 404 U. S. 71, 75-76, a case dealing with sex discrimination:

". . . this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways . . . [It] does, however, deny . . . the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation. . . .' " [Citations omitted].

That only females may be raped is nothing short of a physiological reality, and it is equally clear that the object of the statute is to protect them from that eventuality. Like the Wisconsin courts, we

". . . do not feel called upon to engage in a dissertation of the physiological, medical, sociological and moral problems as they relate to a woman subjected to such a possible pregnancy and those same problems as they relate to a potentially unwanted child." *State v. Ewald*, 63 Wis. 2d 165.

In our view, protection of females from rape is both a legitimate and essential legislative objective. Since only males can perpetrate that crime as principals in the first degree, the limitation of culpability to males constitutes a rational classification directly related to the objective of the criminal penalty. "Normally, a legislative classification will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts." *United States*

*v. Maryland S. S. Ins. Corp.*, 400 U. S. 4, 6. Surely, the state of facts in a rape situation, most sordidly demonstrated by the case at bar, rationally justify the sex classification at issue. Both the Wisconsin and Arizona courts are in accord, *Ewald, supra; State v. Kelly*, 16 Crim. L. Rptr. 2115; though we hardly need precedent to resolve so strained an argument.

The equality of the sexes expresses a societal goal, not a physical metamorphosis. It would be anomalous indeed if our aspirations toward the ideal of equality under the law caused us to overlook our disparate human vulnerabilities.

## Deceased Witness's Testimony

In a preliminary hearing on a pre-trial motion to suppress evidence, appellant received an advisory opinion that if he proffered a transcript and sound record of testimony given at a bond hearing by an alibi witness who was killed before trial, such proffer would be denied.

"THE COURT: Then there is a motion to dismiss the indictment, which is denied.

There is a motion to suppress identification, which is denied.

There is a motion to suppress certain statements. These are statements not only of the defendant, I believe, but also statements that were made by a deceased person by the name of Elizabeth Zellman, sometimes called Betty Zellman.

MR. TARRANT: I didn't have a written motion. My plan was —

THE COURT: You had an oral motion. At least we heard testimony with regard to that and arguments.

MR. TARRANT: Well, if it please the Court, my plan would be, as part of my case, to proffer the testimony to the Court, outside the jury's presence, and then the Court can rule on it.

THE COURT: Well, we will *preliminarily have advised you* that I would not permit this testimony

to come in. That involves a statement made by her to Trooper Dahl, and also a transcript of the — of a bail hearing in the District Court.

MR. TARRANT: And the statement she made to Cpl. Hoopes.

THE COURT: That is right, with regard to the polygraph examination." [Emphasis added].

The evidence was not offered during the trial of the case. We think that the appellant waived this proffer by failing to offer it during trial, under the same reasoning we applied in *Townsend v. State,* 11 Md. App. 487, *cert. denied,* 262 Md. 750; and *Jones v. State,* 9 Md. App. 455, *cert. denied,* 258 Md. 728. In those cases motions were made before trial to exclude evidence and denied after an evidentiary hearing. In those cases when the evidence was offered at trial it was received without objection. There we held that the question of admissibility of the evidence was not before us. We reach the same conclusion here under Md. Rule 1085. The judge's phraseology indicated that he was treating the ruling on the proffered motion as advisory only. In no way did it preclude appellant from preserving his proffer by properly submitting it during trial.[1] It should not pass without notice that counsel himself spoke in terms of indefinite future intentions, ". . . my plan *would be,* as part of my case, to proffer the testimony to the Court, outside the jury's presence, and *then* the Court can rule on it." [Emphasis added]. There is nothing to indicate that appellant was restricted from making the proffer, nor does the record show that understanding by appellant.

### Theological Uplift

During cross-examination the court permitted a minister to sit near the prosecuting witness who had, shortly before

---

1. It was impressed upon and understood by appellant that no proffer or discussion of the proffer should be made before the jury; however, the judge said:

"Yes, and, Steve, you can make this proffer again at the Bench, you know, with regard to this and/or if we are at a recess period or something."

luncheon recess "virtually fainted after being removed from the courtroom." Following an afternoon recurrence, the court permitted the family minister who had been "counseling her since the date of this incident" to sit near her. Appellant moved for a mistrial which was denied by the court:

"MR. TARRANT: Well, I move for a mistrial, if your Honor please, on two grounds. First of all, because of the fact that the prosecuting witness almost fainted in the presence of the jury. I think it has been prejudicial to the defendant and I think that he is thereby unable to receive a fair trial from the jurors. The second ground for the motion is that the court has permitted or is permitting the Reverend Jennings to lend assistance to the witness while she is on the witness stand. And I know of no rule which allows the Court to permit such assistance from a third person.

THE COURT: Well, let me just say this in connection with that, with that objection. I am —

MR. TARRANT: Motion for mistrial.

THE COURT: Motion for mistrial. With regard to the second ground, this person is not by any stretch of the imagination authorized to give any assistance in testimony of this witness. He is there in the event she again becomes physically impaired, perhaps in the sense that she begins to faint, and is really there to hopefully encourage her by his presence only, to keep her strength. With regard to the mistrial, because this person virtually fainted in front of the jury, there is no guarantee that she will, in the presence of some other jury, not have this certain same condition occur, and it is unfortunate, but the Court will deny the request for a mistrial."

At the conclusion of the victim's testimony the court, *sua sponte* delivered a cautionary instruction immediately.

before the incident lapsed from the jury's conscious memory.

"THE COURT: Now, ladies and gentlemen of the jury, before we take another witness, I want to say a little something to you. You are entitled, in the course of your consideration of the whole case, to observe, of course, the demeanor of the witnesses on the witness stand and so forth. However, you should not let the fact that the prosecuting witness in this case virtually fainted in your presence, in the course of cross examination, unduly influence your consideration of her demeanor to the extent that you unfairly consider all of the evidence in the case to the prejudice of the defendant. That is all I am saying. You consider her demeanor other than perhaps the fainting fact. None of us know how we may be physically. All right."

Although the practice of having clergy in apparent attendance for witnesses is certainly not one to be recommended in criminal trials, the error here, if any, was harmless. The necessary ordeal of testifying publicly and repeatedly in detail of the indignities to which a rape victim is subjected, especially the perversions and ravishment endured by this one, cannot be regarded callously. The court did nothing more than allow some amenities to sustain her. The comatose state nature provides to block from our minds such episodes as well as the sanctifying presence of clergy could indeed elicit sympathy for the victim, but we find it difficult to see how it could have significantly influenced the jury. Appellant's defense was not consent but rather that he was elsewhere when the crime was committed. We see no prejudice nor indeed any abuse of discretion in denying the motion for mistrial. *Lusby v. State*, 217 Md. 191; *Kelly v. State*, 16 Md. App. 533, *aff'd.* 270 Md. 139.

### Circumstances of a Previous Conviction

After electing to testify, appellant chose to anticipate the State's attack on his credibility by having counsel question

him regarding prior convictions. He volunteered that he had pled guilty to the crime of assault with intent to rape in Florida. The trial court sustained an objection to an attempt to explain why he so pled. In *Donnelly v. Donnelly*, 156 Md. 81, 86 the Court of Appeals said:

"In order to restore the credibility of a witness so attacked, *the party may not give evidence that he was not guilty of the crime, since the conviction is conclusive evidence of his guilt*, but, although good ground may be assigned and authority found for a different conclusion, the sounder and fairer rule seems to be that the witness may be allowed to explain the circumstances of the offence, if in extenuation of the act and in mitigation of its effect." [Emphasis added].

Appellant proffered precisely that which the Court of Appeals prohibited:

". . . But, if it please the Court, *I would proffer that he would say that he was not guilty of the crime charged* but that his counsel advised him that the death penalty was still in effect and that rather than risk the uncertainty of the death penalty he chose to plead guilty after he was promised probation, *but the fact is that he would state that he wasn't guilty of the crime.* I don't want to open up the facts." [Emphasis added].

That this evidence was proffered on direct rather than after impeachment is a distinction without a difference. The ruling was correct.

### Similar Evidence Rule

A "steak" knife was introduced in evidence which was one of several found in appellant's mother's home where he resided. The knife fit the description given by the victim of the one used by the assailant. It seems the court anticipated a general objection to its introduction which objection does

not appear in the transcript, having apparently come forth just as the court said "Overruled" upon the State's offer of the knife. Appellant did object to the police writing on the envelope containing the knife, however, which objection was sustained.

Even assuming appellant had preserved the issue by objection, we see no error. His complaint apparently is that the knife was not proffered as the weapon used by appellant but only as one like it.

> "The rule is well established that physical evidence need not be positively connected with the accused or the crime to be admissible; it is admissible where there is a reasonable probability of its connection with the accused or the crime, the lack of positive identification affects only the weight of the evidence." *Doye v. State*, 16 Md. App. 511, 519, *cert. denied*, 268 Md. 747.

The *Doye* court had earlier noted at 518:

> " 'It is also relevant to show that the defendant owned or *had access* to any article with which the crime was or *could have been committed.* [Emphasis added].' " Citing 1 Wharton, *Criminal Evidence*, (12th ed.) § 203 at 408.

We see no error.

Effective Assistance of Counsel at the Line Up

Appellant raises three questions regarding the line up identification: effective assistance of counsel, dissimilarity of participants, and a suggestive pre-line up identification. Our review of the record included the photographic identification testimony as well as a picture of the line up placed in evidence, neither of which bears out the assertion of appellant. Even were that not so, these questions are intrinsically part of the effective assistance of counsel issue which was not raised below and hence, is not now reviewable, Md. Rule 1085. Resolution of this issue must be

had, if at all, by way of post-conviction relief. *White v. State,* 17 Md. App. 58, *cert. denied,* 268 Md. 754.

## Publicity During Trial

Failure to show prejudice inclines us to affirm the lower court's denial of a mistrial motion based on a newspaper report of the progress of the trial. "Prejudice must be shown as a 'demonstrable reality' and not as a 'matter of speculation' " for this Court to find that a trial judge abused his discretion in denying a motion for mistrial. *Baldwin v. State,* 5 Md. App. 22, 28, *cert. denied,* 252 Md. 729.

## Inflammatory Photographs

We have reviewed the photographs of the victim's wounds, cuts and abrasions and see no abuse of discretion in their admission into evidence. *Carroll v. State,* 11 Md. App. 412, *cert. denied,* 262 Md. 745.

## Chain of Custody

Appellant questions the admission into evidence of hair samples taken from him based upon a questionable chain of custody. We do not require an absolute chain of custody; rather a showing of reasonable probability that no tampering with any evidence has occurred. *Bailey v. State,* 16 Md. App. 83; *State v. Tumminello,* 16 Md. App. 421. Our review of the record satisfies us that such reasonable probability exists.

## The "Harley Hog"

The victim's testimony indicated that when she first saw appellant he was standing in the road in front of her headlights. Behind him there was a large motorcycle traversing the road. She recalled being "tailgated" just before this by a motorcycle.

Appellant came to the car, pointed a gun at her with threatening words and gestures, and held her at bay while he pushed the motorcycle to the side of the road. Professing that a demonstration would show that it was impossible for

a cycle as large as appellant's [2] to be so handled, he proposed:

> ". . . to have someone my own size, or bigger, or anyone, someone of the jury, one of the men or anyone to take the cycle, hold it up, kick the stand down and push it forward, let it go back and lower it and pick it back up."

The trial judge denied the request but did permit the jury to view the motorcycle parked outside the courtroom window.

Trial judges are vested with wide discretion in the area of permitting or denying demonstrations. The exercise of that discretion will not be disturbed on appeal unless abuse is apparent. *O'Doherty v. Catonsville Plumbing and Heating Co., Inc.*, 269 Md. 371. We see no abuse.

*Judgments affirmed.*

---

**2.** By appearance from the photographs and from references in the testimony, the motorcycle was a Harley Davidson 1200, the largest made, vulgarly referred to as a "Harley Hog."