**STATE of Missouri, Plaintiff-Respondent,**

v.

**Oscar Eugene LORENZE, Defendant-Appellant.**

**No. 11225.**

Missouri Court of Appeals, Southern District, Division One.

Dec. 28, 1979.

David R. Fielder, Springfield, for defendant-appellant.

John Ashcroft, Atty. Gen., Steven W. Garrett, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GREENE, Judge.

Defendant, Oscar Eugene Lorenze, was jury convicted in 1978 of the crime of forcible rape, in violation of § 559.260,[1] RSMo Supp. 1975, which was the applicable statute in force at that time. He was thereafter sentenced as a result of the conviction to 50 years imprisonment, under the provisions of the second offender act. This appeal followed.

Defendant raises five points of error on appeal, none of which allege insufficiency of the evidence. Therefore, a detailed recitation of the facts is unnecessary. It suffices to say that the victim, a university

---

1. "Every person who shall be convicted of rape, either by carnally and unlawfully knowing any female child under the age of sixteen years, or by forcibly ravishing any woman of the age of sixteen years or upward, shall be punished by imprisonment by the division of corrections for not less than two years."

coed, was doing her laundry at a laundromat about 10 p. m. on June 16, 1978. No one else was in the building. Her assailant, identified by the victim as the defendant, entered the laundromat through a rear door, hit her in the stomach, choked her, and dragged her outside to an alley where she was raped through force, and fear of force. Her testimony concerning the rape received corroboration from other witnesses, including customers who entered the laundromat shortly after the rape, and medical personnel. Defendant's defense was alibi, which the jury evidently did not believe.

Defendant first contends that the trial court erred in overruling his motion to quash the felony information, for the reason that § 559.260 is unconstitutional, in that it distinguishes victims of rape by sex (female); thus depriving defendant of due process of law and equal protection of the law under the Missouri and United States Constitutions.

■■■ Defendant cites *Meloon v. Helgemoe,* 564 F.2d 602 (1st Cir. 1977), cert. denied, 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978), as support for his argument. *Meloon* does not apply here. It was a statutory rape case, and the court's analysis there was predicated on the consensual nature of the crime committed. In such cases, there is a reasonable claim made for unconstitutional discrimination. However, statutes charging forcible rape, as is the case here, are distinguishable. Forcible rape is an offense that can only be committed against a female, and, insofar as personal participation is concerned, can only be committed by a male. Therefore, if the protection of the female from the act of forcible rape is a proper subject of State concern, which it is, the classification of victims along sex lines in legislation condemning such an act becomes inherently necessary. *In re Interest of J. D. G.,* 498 S.W.2d 786, 793 (Mo.1973). Many of Missouri's sister states have reached decisions upholding the constitutionality of their forcible rape statutes against equal protection attacks. See *People v. Gould,* 188 Colo. 113, 532 P.2d 953

(1975); *People v. Medrano,* 24 Ill.App.3d 429, 321 N.E.2d 97 (1974); *State v. Price,* 215 Kan. 718, 529 P.2d 85 (1974); *Finley v. State,* 527 S.W.2d 553 (Tex.Cr.App.1975).

A clear cut rationale for upholding constitutionality of such statutes was expressed by the Maryland Court of Special Appeals in *Brooks v. State,* 24 Md.App. 334, 330 A.2d 670, 673 (1975), where the court stated: "The equality of the sexes expresses a societal goal, not a physical metamorphosis. It would be anomalous indeed if our aspirations toward the ideal of equality under the law caused us to overlook our disparate human vulnerabilities." To hold otherwise would be contrary to common experience and biological fact. As perceived by Mr. Bumble, in *Oliver Twist,* the law at times may appear to be a ass, but this court should resist the temptation to contribute to such a belief by a strained construction of the word "equality" which would be contrary to the facts of life. The statutory classification of § 559.260 is reasonable, and the statute does not violate the Equal Protection Clause of the Missouri Constitution or the Fourteenth Amendment of the Constitution of the United States. *In re Interest of J. D. G.,* supra at 793. The trial court did not err in overruling defendant's motion to quash the information. The point is denied.

■■■ Defendant's second point alleges that the trial court erred in allowing State's witness Rick Ebeirus to testify, when his name had not been disclosed to defendant, prior to trial, in violation of Rule 25.32. It is true that the rule provides for such disclosure. However, the State did not learn of the existence of witness Ebeirus until the trial had commenced. As soon as the prosecuting attorney received such information, he immediately notified defendant's attorney of the name of the witness, as is required by Rule 25.37. Defendant's attorney then objected to the use of the witness on the grounds that he had not had sufficient time to interview the witness and check his story. The trial judge told defense counsel he would give the attorney time to voir dire or depose the witness, and to conduct an

investigation concerning his version of the facts, prior to the witness being allowed to take the stand. Defendant's counsel, after talking to Ebeirus, stated to the court: "Well, your honor, I feel that I need no further investigation because this witness is not certain either, he cannot identify this boy as being there in the evening." Defense counsel did not request a continuance for further investigation, and made no further objection to Ebeirus' taking the stand.

Defendant has not demonstrated any prejudice due to the late endorsement of the witness. Rule 24.17 authorizes the endorsement of witnesses at any time, upon order of the court. If the trial court does allow a late endorsement, it must give defense counsel ample opportunity to interview the proposed witness, and check out his story. The trial court made such an offer here. The trial court is vested with broad discretion in permitting the late endorsement of a witness, and, absent abuse of that discretion, his decision should stand. *State v. Barker*, 572 S.W.2d 185, 187 (Mo.App.1978). There was no abuse of discretion on the part of the trial court in allowing the witness to testify. Defendant's second point is denied.

■ Defendant's third point charges that the trial court erred in overruling his motions to suppress prosecutrix' in-court identification of defendant because that identification was tainted by an impermissibly suggestive photographic lineup. The photographic lineup, according to defendant, was impermissibly suggestive because prosecutrix assumed that one of the people in the photographs had been arrested for the crime. Such thoughts upon the part of the witness, in the absence of other suggestive features, will not render an identification constitutionally infirm. *State v. Bivens*, 558 S.W.2d 296, 299–300 (Mo.App.1976).

■ Defendant filed an Amended Motion to Suppress Identification in which he sought to suppress prosecutrix' in-court identification because: 1) the photographs displayed to the victim did not depict subjects with similar characteristics, 2) the photographs were displayed in an impermissibly suggestive manner, and 3) prosecutrix' view of her assailant during the crime was insufficient to allow her to make a reliable identification. The trial court, after hearing, overruled the motion. Prior to the beginning of trial, defendant again objected to any evidence concerning the pre-trial identification process for the reasons stated in his amended motion to suppress. After the trial court again overruled the motion, defendant requested, and the court agreed, that his objection be shown as a continuing objection throughout the course of the hearing. This continuing objection was sufficient to preserve those points for review, as required by *State v. Timmons*, 584 S.W.2d 129, 132 (Mo.App.1979) and *State v. Young*, 534 S.W.2d 585, 589 (Mo.App.1976).

However, where the objection raised on appeal is different from those stated in defendant's motion to suppress, and preserved through his continuing objection and motion for new trial, the objection, raised for the first time on appeal, is not preserved for review by the continuing objection. *State v. Gant*, 490 S.W.2d 46, 49 (Mo.1973). Defendant's point of error here was not asserted in his motion to suppress, was not raised prior to trial or preserved by his continuing objection, was not made at the time prosecutrix testified, and was not contained in his motion for new trial. Point three was not, therefore, preserved for review.

■ In addition, defendant has the burden of demonstrating any error in the trial court's findings by filing a transcript which incorporates the proceedings which show that the trial court erred. *Jackson v. State*, 514 S.W.2d 532, 533 (Mo.1974). Since defendant did not file a transcript of the hearing on his motion to suppress, the court here cannot review the evidence elicited there to determine whether the trial court made a correct ruling, *State v. Harris*, 564 S.W.2d 561, 565–566 (Mo.App.1978), and can only review the testimony elicited at trial to determine if there was any plain error, which would require reversal under Rule 27.20(c), in admitting the testimony of prosecutrix on the issue of identification.

On direct examination, the prosecutrix was asked:

"Q. What were you told prior to seeing these photographs on this occasion?

A. The only thing I was told was to look them over very carefully and take my time, that's the only thing.

\* \* \* \* \* \*

Q. What caused you to select that photograph?

A. Because I knew from that night, knew who it was."

While on cross-examination, the following exchange occurred:

"Q. Patricia, at the time that you talked with your local sheriff up there in Carrollton I believe you indicated that he—while he didn't point out the defendant's picture in the stack, he did indicate to you that they had someone in there that you were expected to identify or something of that nature, did he not?

A. No.

Q. Was it your understanding when you were shown these photographs that they had a photograph of a person they had arrested for this crime?

A. I thought that they had.

Q. Yes. Did the sheriff indicate that to you, or some officer in Springfield, that they thought that they had a photograph of the right person?

A. Nobody told me that about any photograph.

\* \* \* \* \* \*

Q. . . . but at the preliminary hearing I believe you told me that the officers, when you were shown the photographs, the officers thought they had a photograph of the rapist, don't you remember that being said at the preliminary, so that when you looked at the photographs you knew you had to pick somebody out?

A. They just asked me to—they had somebody in custody and they showed me pictures."

In addition, Paul Johnson, the Sheriff of Carroll County, Missouri, who conducted the pretrial photographic lineup, testified that he received five photographs from the Springfield Police Department together with a letter requesting that he show the pictures to prosecutrix. When prosecutrix came into the sheriff's office, Johnson laid the pictures out on a conference table in front of her. There was nothing in the letter from the Springfield police to Johnson which indicated that any of the photographs represented a suspect in the case.

■ From the evidence available to us, we see nothing which would indicate that pressure of any kind was put on prosecutrix to get her to pick one of the five photographs submitted to her as her assailant. Indeed, her testimony indicates that she picked defendant's picture because she immediately recognized him as her attacker. There was nothing in evidence to indicate that the pre-trial lineup was so impermissibly suggestive as to produce manifest injustice or a miscarriage of justice. Defendant's third point is denied.

■ In his fourth point, defendant alleges that the trial court erred in allowing the prosecutor and prosecutrix to mention prosecutrix' out-of-court identification because it improperly bolstered her in-court identification. Defendant failed to timely and specifically object to the testimony of prosecutrix on this issue and the point is not preserved as to her testimony. Even if defendant had objected, there would be no plain error in admitting the testimony of prosecutrix since, as an identifying witness, her testimony, concerning her extrajudicial identification of defendant by means of a photograph, is admissible. *State v. Degraffenreid*, 477 S.W.2d 57, 62 (Mo. banc 1972). And, even though defendant did timely object to the prosecutor's comments, and preserved that error for review in his motion for new trial, such comments were proper, as the evidence he spoke of in his opening statement was forthcoming through the testimony of the prosecutrix. *State v. Emrich*, 250 S.W.2d 718, 723 (Mo.1952).

Defendant's fifth and final point alleges that the trial court erred in admitting into evidence a police mug shot of defendant, because it prejudiced the jury by depicting appellant as a person with a criminal record. The only objection that defendant made to the photograph, when it was admitted, was that preserved by his continuing objection. Defendant's motion to suppress did not complain that the photographs indicated a past criminal life of defendant. Therefore, this point has not been preserved.

Nor has appellant shown any manifest injustice which would require reversal under the plain error rule, Rule 27.-20(c). Mug shots are in themselves neutral and do not constitute evidence of prior crimes and offenses. *State v. Hamell*, 561 S.W.2d 357, 361 (Mo.App.1977). The presence of the defendant in the courtroom, and the viewing of his photograph, by which the prosecutrix identified him as her attacker, made it possible for the jury to determine the accuracy or inaccuracy of her identification of him from the photographic lineup. *State v. Childers*, 313 S.W.2d 728, 731 (Mo. 1958); *State v. Jones*, 531 S.W.2d 67, 73 (Mo.App.1975). In addition, all identifying information appearing on the photographs was masked, and was not viewed by the jury. There was no prejudicial error in admitting the photograph. *State v. Crossman*, 464 S.W.2d 36, 41 (Mo.1971). Point five is denied.

A review of the entire record does not reveal any prejudice to defendant by reason of any ruling of the trial court. The punishment assessed was commensurate with the facts of the crime. Defendant had a fair trial.

The judgment is affirmed.

FLANIGAN, C. J., and TITUS and PREWITT, JJ., concur.