*Ronald Junior Francois v. State of Maryland*, No. 1254, Sept. Term, 2022. Opinion by Taylor, J.

**EVIDENCE – LAY OPINION TESTIMONY – PRESERVATION – HARMLESSNESS**

The defendant's challenge to the testimony of an eyewitness regarding his familiarity with firearms was not preserved when no objection was raised until after the defense had elicited similar opinions on cross-examination, and made no objection to any prior or subsequent opinion offered by the witness. Any error was harmless given that none of the opinions offered by the witness addressed any relevant issue at trial, and that the witness himself agreed that he could draw no firm conclusions from his observations.

**EVIDENCE – PRIOR BAD ACTS – SPECIAL RELEVANCE**

The court did not err in determining that text messages regarding the defendant's recent gun possession were admissible in a trial for the unlawful possession of a firearm which was never recovered. The text messages suggesting that the defendant possessed firearms days before the incident had a special relevance to the question of whether the defendant possessed a firearm and ammunition on the date in question. Evidence that the accused had recently possessed a firearm properly corroborated the eyewitness testimony that the accused possessed a firearm in the incident, and the court did not abuse its discretion in determining that the probative value of this evidence outweighed the risk of unfair prejudice.

**CLOSING ARGUMENT – FACTS NOT IN EVIDENCE**

The prosecutor's remarks in rebuttal, interpreting a slang term in a text message – "I suggest to you that means 'LOL. Yes, I'm up for it'" – did not constitute the presentation of facts not in evidence, but was proper argument suggesting that the jurors read the text messages in context to interpret the language used in the message. Even if improper, the remark did not constitute reversible error.

Circuit Court for Montgomery County
Case No. 138873C

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1254

September Term, 2022

_____

RONALD JUNIOR FRANCOIS

v.

STATE OF MARYLAND

_____

Graeff,
Reed,
Taylor, Robert K., Jr.
        (Specially Assigned),

JJ.

_____

Opinion by Taylor, J.

_____

Filed: November 30, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

The Appellant, Ronald Junior Francois, was charged in the Circuit Court for Montgomery County with first-degree assault (Md. Code, Crim. Law Art. § 3-202); possession of a regulated firearm after a prior disqualifying conviction (Md. Code, Pub. Safety Art. § 5-133); and possession of ammunition when disqualified from possessing a firearm (Md. Code, Pub. Safety Art. § 5-133.1). He was tried before a jury on June 6-9, 2022. The trial court granted the defendant's Motion for Judgment of Acquittal on the assault charge. Mr. Francois was convicted of unlawfully possessing a regulated firearm and ammunition. He was sentenced to ten years of incarceration, suspending all but the five-year mandatory minimum, with three years' probation on the firearms count; he was sentenced to one year of incarceration, concurrent, on the ammunition count. From those convictions, he noted this timely appeal.

He presents three questions on appeal, which we have rephrased for clarity:

1. Did the trial judge err in allowing expert testimony from a lay witness regarding the differences between different types of firearms?

2. Did the motions judge improperly allow "prior bad acts" evidence when she admitted text messages regarding the use and possession of firearms by the defendant?

3. Did the trial judge err in allowing the prosecutor, in closing argument, to argue that the term "kill" in a text message was meant to indicate agreement?

For the reasons set forth below, we shall affirm the judgments of the circuit court.

**FACTUAL AND PROCEDURAL BACKGROUND**

The testimony given at trial was that on July 1, 2021, Gilbert Gray was called by his daughter, Jamia Gray, to intervene in a domestic dispute between Jamia and her husband, the defendant, Ronald Francois. Ms. Gray accused Mr. Francois of removing boxes of her

belongings from a box truck (packed in anticipation of their family move to Florida) and leaving the boxes outside of Mr. Gray's house. Mr. Gray secured the boxes and then drove to a nearby bank parking lot where he encountered his daughter and Mr. Francois. Upon his arrival, Ms. Gray told Mr. Gray that Francois had taken her phone. Mr. Gray approached Mr. Francois and the box truck whereupon, Mr. Gray testified, Mr. Francois opened the driver's door of the truck, reached in, and displayed a handgun. Mr. Gray retreated and called 911, reporting that Mr. Francois had displayed a bronze-colored handgun "like a 9 mm." Mr. Francois left in the box truck before police arrived.

About 30 minutes later, police spoke to Mr. Francois by telephone. He agreed to meet them at his parents' home. He arrived at that home and was arrested. A search of Mr. Francois's person incident to that arrest revealed two cell phones. The box truck was found parked a few blocks away. A subsequent search of the box truck revealed ammunition of three different calibers (.45, .40, 9mm), and a magazine, but no firearm. A later search of the cell phones revealed text messages, purportedly to and from Mr. Francois, communicating with an unknown individual about guns and trips to the gun range.

During his testimony, Mr. Gray stated that he had some familiarity with firearms and described the gun he saw in Mr. Francois's hand as a "bronze . . . Like 380." He was cross-examined regarding the limited nature of his experience with firearms. On redirect, he testified as to differences between different types of similar handguns.

Additional facts will be presented as necessary.

2

# DISCUSSION

## I.

**The claim of error regarding "expert testimony" is unpreserved, and any error was harmless.**

The State's primary witness was Mr. Gilbert Gray, the only person who could testify that he observed a handgun in Mr. Francois's hand on July 1, 2021. During his direct examination, the State played a recording of Mr. Gray's 911 call, wherein he told the 911 operator that the gun "was like a 9mm." The prosecutor asked Mr. Gray about his experience with handguns. When Mr. Gray began to relate a story about something that happened when he was 12 years old, defense counsel raised a relevance objection. The prosecutor proffered that the testimony would relate to "when [Mr. Gray] had an opportunity to see guns before" and that this information would "help[ ] explain for the jury . . . what kind of weight to give his testimony when he says that the object pointed at him looks like a handgun." The court overruled the objection, telling the parties that it would "wait and see" and strike the testimony if it seemed improper. Without any further objection, Mr. Gray testified that he was shot when he was 12, and that he had been asked by police to identify both the shooter and the weapon when a suspect was arrested. The weapon that he saw in Mr. Francois's hand, Mr. Gray testified, looked "almost like the same type of gun" that was used against him when he was 12. Moreover, Mr. Gray testified, his parents were "into law enforcement" and that the weapon he was shot with was "a .38" like the one his mother used to carry, and that his father, a police officer, "carried a 9

3

millimeter." He told the jury that the weapon Mr. Francois displayed was smaller than the ones he saw his parents carry.

During cross-examination, defense counsel asked Mr. Gray about having previously described the weapon as being perhaps "a 30" or some other caliber. He elicited testimony from Mr. Gray regarding the extent of his familiarity with firearms in general and 9mm firearms in particular, including the fact that Mr. Gray's daughter carried a weapon as part of her job as a police officer, and that he himself had not owned a firearm prior to this incident. The defense also challenged Mr. Gray regarding the length of time that he could have seen any weapon being displayed. There were no objections from the State to these aspects of the cross-examination.

On redirect, the State returned to the topic of Mr. Gray's familiarity with handguns. The following exchange is significant:

[STATE]: Okay, and there was some cross-examination about a 9 millimeter versus a 30. Can you explain to the jury the difference between those two types of guns?

[GRAY]: The difference between them is just one is just bigger than the other one, but they take the same bullets.

[STATE]: Okay, bigger in what way?

[GRAY]: Bigger in size, as far as size.

[STATE]: Okay, and how much difference is there between the size of the 9 millimeter and –

[DEF]: Objection. Mr. Gray is not qualified to talk about that.

[COURT]: Overruled.

[DEF]: He's thinking he was shot once when he was 12.

4

[COURT]:     Overruled. Overruled.

[STATE]:     When you say one is bigger than the other, how much bigger are we talking about?

[GRAY]:      I mean, that's more like a pocketsize gun versus one, putting one on the side of your hip.

[STATE]:     Okay

[GRAY]:      It's a small gun.

[STATE]:     And when you were saying it could have been a 9 millimeter or a 30 millimeter [sic], you had some question about the exact type of handgun, is that correct?

[GRAY]:      Correct. I didn't mean to say 30. It was more like a 380 or something like that. Not saying like a 30.

[STATE]:     A 380.

[GRAY]:      Yeah.

[STATE]:     And the difference between a 9 millimeter and a 380?

[GRAY]:      One is bigger than the other. It's more, a Glock would be, that's like in the family, it's like a family of the size guns, different sizes. And that's the biggest of all the guns, all the 9 millimeters.

[STATE]:     And then you had some question about the exact type of handgun you saw. Did you have any question that what was pointed at you looked like a handgun?

[GRAY]:      No, I didn't have no question. I know what I saw.

On appeal, Mr. Francois complains that this was improper expert testimony and that its admission constitutes the basis for reversing his conviction. The State counters that his claim was not properly preserved below, that the testimony was permissible "lay opinion," and that any error was harmless.

5

## A.

### *Any error is unpreserved.*

The defendant's current appellate complaint is unpreserved. At oral argument, counsel for Mr. Francois made it clear that he was challenging only the statement made on redirect, over objection, regarding distinguishing gun caliber based on the size of the weapon. However, this objection was not made until after (a) the prosecution had elicited some testimony about the witness's prior experience with handguns; (b) the defense had elicited more testimony regarding the witness's ability to distinguish between handguns of different caliber; and (c) the prosecution had elicited yet more testimony about the size differences between 9mm and .30 caliber handguns. After that objection was overruled, the prosecution brought out even more testimony about the differences between different types of firearms, without any further objection from the defense.

"An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived." Md. Rule 4-323. Moreover, if the same or similar evidence is admitted without objection at another point in the trial, the objection is waived. *DeLeon v. State*, 407 Md. 16, 32-33 (2008).

In this case, a single objection to Mr. Gray's qualifications was insufficient to preserve an objection to expert testimony, when the same or similar testimony was elicited

6

without objection both before and after the one objected-to question.[1] Here, notwithstanding an earlier objection to the relevance of an anecdote from Mr. Gray's childhood, the defense not only failed to object to Mr. Gray's "expert" opinions on direct, but in fact went somewhat further than the prosecution had gone in delving into Mr. Gray's expertise, *vel non*, during cross-examination. Then, when the prosecutor explored that area of testimony during redirect, the defense did not object to the first two questions about relative firearm sizes. The defense objected to the third such question, but did not object to the next two.

Having failed to object to the initial opinion testimony, and then having elicited additional opinion testimony on cross-examination, and then having failed to object to all but one of the subsequent opinion testimony questions on redirect, the defense has forfeited its right to complain of the evidence on appeal. No further appellate review is warranted. Even if preserved, however, we would conclude that any error was harmless.

**B.**

***Any error was harmless.***

The State also argues that any error was harmless. An error is harmless if the Court is satisfied beyond a reasonable doubt that the error had no effect on the outcome. The burden of establishing this is on the State. *State v. Jordan*, 480 Md. 490, 506 (2022).

---

[1] The Court will assume, without deciding, that "Mr. Gray is not qualified to talk about that" is sufficient to alert the trial court that the defense was objecting to the introduction of lay opinion testimony.

Mr. Gray was the State's primary witness. Unless the jury found him to be a credible witness, the prosecution could not prove his case. Mr. Francois argues on appeal that the largely irrelevant discussion of firearms expertise may have served to improperly bolster Mr. Gray's credibility.

Mr. Gray's ability to distinguish a .38 from a 9mm is of no relevance in this case. The State made it clear that it was presenting this testimony only to show that Mr. Gray was capable of recognizing a handgun when he saw one. One need not be an expert to know what a handgun looks like. Moreover, Mr. Gray seemed to be opining that the handgun he allegedly saw in Mr. Francois's possession was smaller than a 9mm and may have been a .38 or a .380. The ammunition recovered in the car was for a 9mm and for a .45. Therefore, no juror would have relied on Mr. Gray's handgun testimony to find that Mr. Francois possessed the ammunition found in the vehicle. The conclusion of that portion of the redirect examination was clear: regardless of his uncertainty about the specific caliber of the weapon, he had no question that what he saw was a handgun.

Even limiting consideration to the one question that was subject to an objection on the basis of expert qualifications, the Court is satisfied beyond a reasonable doubt that the response to that question had no effect whatsoever on the outcome of this trial. *Gross v. State*, 481 Md. 233, 271 (2022). The gradual and subtle progression of Mr. Gray's testimony regarding the gun – as noted above, partially elicited by the defense during cross-examination, and not objected to before or after the single instance highlighted – had nothing to do with whether Mr. Francois displayed a firearm on the day in question. It was in no way incumbent upon the prosecution to prove the caliber of the weapon. The State

8

had to show only that the weapon was a regulated firearm – here, a handgun. Whether or not Mr. Gray could tell, at a glance, what caliber the firearm was, is irrelevant. And in fact Mr. Gray testified that he could NOT be sure what caliber the firearm was, underscoring both the harmlessness and ultimate pointlessness of his testimony in that regard. Thus, to the extent preserved, any error does not warrant reversal in this case.

## II.

### The court properly admitted the text messages.

Mr. Francois moved in limine to exclude the contents of text messages found on his cell phone after the arrest. Those messages appear to be an exchange between Mr. Francois and another individual regarding different types of firearms and their shared fondness for visiting the shooting range to try out these weapons. Under ordinary circumstances, such information would not be considered a "bad" act; shooting is a perfectly ordinary and lawful hobby. However, the parties stipulated that Mr. Francois was previously convicted of a crime which precluded him from possessing a firearm, making the text messages evidence of a crime distinct from the crimes he was charged with.

Mr. Francois argued in the lower court, and argues on appeal, that the admission of the evidence violated Md. Rule 5-404(b). That rule states, in pertinent part, that "[e]vidence of other crimes, wrongs, or other acts including delinquent acts . . . is not admissible to prove the character of a person in order to show action in the conformity therewith. Such evidence, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, absence of

9

mistake or accident[.]" This is a rule of exclusion – that is, evidence of prior bad acts is presumptively inadmissible unless an exception applies. *Emory v. State*, 101 Md. App. 585, 601 (1994). Before the evidence may be admitted, therefore, the trial court must determine (a) that there is clear and convincing evidence that the "bad acts" actually occurred; (b) that the evidence has a special relevance other than showing a propensity to commit crimes; and (c) that the probative value of the evidence outweighs the risk of unfair prejudice. *Skrivanek v. State*, 356 Md. 270, 291 (1999).

Mr. Francois does not argue that there was not clear and convincing evidence that he had, in fact, exchanged text messages about his (unlawful) possession and use of various firearms. He argues that the motions court erred in concluding that the evidence had a special relevance beyond propensity, and abused its discretion in determining that the risk of unfair prejudice was outweighed by the probative value of the evidence.

**A.**

***Special relevance beyond propensity.***

The motions court made explicit reference to the MIMIC exceptions, a hoary legal chestnut that is useful, but not determinative, shorthand for some examples of "special relevance." "MIMIC" stands for "Motive, Intent, (absence of) Mistake (or accident), Identity, Common (scheme or plan)." MIMIC does not describe the entire universe of special relevance under Rule 5-404(b); there is no "closed and finite list" of exceptions. *Solomon v. State*, 101 Md. App. 331, 353 (1994). "Evidence of other acts that has sufficient

10

relevance, other than merely by showing criminal character, may be admissible." *Harris v. State*, 324 Md. 490, 496-97 (1991).

The motions court held that the text messages were admissible because they "demonstrate the defendant's knowledge and access to firearms, and his proclivity or interest in them, in firing them and going to the range, which would lead to an argument that if he has that type of access, then what he displayed . . . was actually a firearm under the definition of our statute." The court referred specifically to *Brooks v. State*, 24 Md. App. 334 (1975), which upheld the admission of evidence that a person accused of wielding a knife during a rape was found to have a similar-looking knife in his home later. Showing possession of a similar weapon on another occasion was "'relevant to show that the defendant owned or had access to any article with which the crime was or could have been committed.'" *Id.* at 344 (quoting *Doye v. State*, 16 Md. App. 511, 518 (1973)).

The motions court also referred several times to *Reed v. State*, 68 Md. App. 320 (1986). Reed was charged with shooting a man to death in Queen Anne's County in 1985. Reed claimed on appeal that the trial court had erred in admitting propensity evidence when it allowed testimony that Reed had been seen with a handgun two-and-a-half years prior to the shooting. This Court held that the admission was proper: "The evidence was probative to show that the appellant possessed the type of weapon employed in killing Middleton. The remoteness of that possession from the date of the homicide went to the weight of that evidence. The court did not abuse its discretion in determining that this evidence was relevant." *Id.* at 330.

After discussing *Reed* and *Brooks*, the motions court held that the text messages constituted "evidence that a trier of fact could consider, that would be probative, as evidence of perhaps prior bad act, or a pattern of behavior by Mr. Francois that would demonstrate his access to guns, that firearms that are capable of firing a projectile."

On appeal, Mr. Francois relies heavily on *Dobson v. State*, 24 Md. App. 644 (1975), for the proposition that "where the State fails to connect the prior bad acts evidence regarding a weapon to the weapon allegedly used in the crime at issue, it is improper to admit such evidence." Since, Mr. Francois argues, the State could not prove that the weapon Mr. Gray allegedly saw was a weapon discussed in the text messages, its admission violated Rule 5-404 under *Dobson*.

*Dobson*, however, was not a Rule 5-404(b) case. *Dobson* was a Rule 5-404(a) case (or would have been, had the Maryland Rules of Evidence been codified as such in 1975).

Dobson was charged with murder and kidnapping for events which occurred in June of 1972. In July of 1973, police executed a search warrant on the home Dobson shared with his parents and sister. In the course of that raid, the police allegedly recovered a .38 caliber revolver which had been reported stolen by its owner in late June of 1973, and which was ultimately excluded as the weapon used in the murder. The defense argued that the weapon was planted by the police or people acting on behalf of the police.

After the State rested its case, Dobson called his father as a witness, who testified during cross-examination that he, personally, had never seen Dobson with a gun. In rebuttal, the State called a man who testified that he had seen Dobson with a firearm in February of 1973, eight months after the kidnapping and murder, and four months before

12

the .38 was reported stolen. The prosecutor was adamant at trial that he was presenting this evidence to rebut the father's testimony; the defense attorney was equally adamant that it in no way rebutted the father's testimony, since Dobson's father was not alleged to have been present at the place and time where the rebuttal witness saw Dobson with a gun.

On appeal, this Court held that this was improper rebuttal, because it did not in fact rebut the testimony of the defense witness. The Court also stated that "[p]ossession by the appellant of a weapon four months prior to the happening of a particular event does not give rise to a rational inference that appellant, because of such possession, also possessed other weapons at a later time." *Dobson*, 24 Md. App. at 660. This was, to be clear, not the reason the State offered the rebuttal testimony. It was undisputed that the .38 found in Dobson's house was not the weapon used in the crime. Nor does it appear that the State in any way suggested that the unknown weapon allegedly in Dobson's possession in February of 1973 was the weapon used in the crime (or in the murder, for which he was acquitted).

*Dobson*, therefore, does not stand for the proposition that proof of prior gun possession is never relevant in a gun case. It stands for the proposition that rebuttal evidence is not relevant if it does not rebut anything.

Mr. Francois also cites *Sweeney v. State*, 242 Md. App. 160 (2019), for the proposition that Rule 5-404(b) was violated by introducing a photograph of what the State termed "burglary tools" into evidence. But in *Sweeney*, it was undisputed that no burglary tools were used to obtain the stolen items. The door to the ransacked tool shed was unlocked. The only reason to introduce photographs of "burglary tools" (which included a sprinkler and a bicycle pump) was to show that Sweeney was a habitual burglar. He may

well have been, but that was not admissible to show that he committed that particular burglary.

Similarly, *Smith v. State*, 218 Md. App. 689 (2014), is inapposite. Smith was charged with the murder of his roommate; there was no dispute that the victim had been shot and that the firearm used had belonged to Smith. Smith's contention was that the victim shot himself using one of Smith's guns, which Smith then threw into a pond. Smith was legally entitled to possess firearms and ammunition, and police eventually found 8 lawfully owned firearms in Smith's home. In an advisory holding (the conviction having already been reversed due to voir dire error), this Court ruled that the admission of the firearms was error, because it had no relevance to any disputed issue at trial.

But that was not "prior bad acts" evidence. Smith's ownership of the weapons was not a crime. Therefore, the analysis was under Rule 5-403 – balancing the probative value against the risk of unfair prejudice – and not Rule 5-404(b).

Here, by contrast, Mr. Francois was not allowed to possess firearms, and the question of whether he did in fact have access to firearms was very much an issue at trial. While ownership of firearms was not relevant in the *Smith* case, it is relevant here. The fact that Mr. Francois admitted (in the text messages) to possessing handguns just days before the incident is specially relevant to determining whether Mr. Francois possessed a handgun. Moreover, as the State notes in its brief, the ammunition the police recovered was found in a box truck that Ms. Gray (a lawful gun owner) had rented and to which she had access. Demonstrating that Mr. Francois discussed trips to the shooting range in the days and weeks prior to the incident was relevant to show that the ammunition in the truck was his,

14

not hers. Moreover, in the text messages, Mr. Francois seems to state that he owns a .45, and .45 caliber rounds were found in the truck. This evidence was relevant. It was not admitted to show that Mr. Francois was a general scofflaw and therefore more likely to engage in the misconduct of which he was accused. It was admitted to corroborate and bolster the testimony that on a specific date and place, he possessed a handgun and ammunition.

**B.**

***Weighing unfair prejudice against probative value.***

Mr. Francois complains that the motions court abused its discretion in determining that the probative value of the evidence outweighed the risk of unfair prejudice. This Court recently addressed the formidable burden faced by an appellant alleging an abuse of discretion under such circumstances.

> Summarily, the nature of the evidence must be such that it generates such a strong emotional response from the jury such that the inflammatory nature of the evidence makes it unlikely for the jury to make a rational evaluation of the evidentiary weight. The inflammatory nature of the evidence must be such that the "shock value" on a layperson serving as a juror would prevent the proper evaluation or weight in context of the other evidence.

*Urbanski v. State*, 256 Md. App. 414, 434 (2022), *cert. denied*, 483 Md. 448 (2023).

Mr. Francois's text message exchanges about his use and possession of firearms were relevant in a case about his use and possession of firearms. The State was not required to prove that the firearm he allegedly displayed in July of 2021 was the same firearm he discussed in text messages in February, March and June of 2021 for these messages to be relevant. One could infer from the text messages that Mr. Francois possessed a .45 on June

15

25. This could help a reasonable fact-finder decide if what Mr. Gray had seen on July 1 and described as a handgun was, in fact, a firearm. It could help the fact-finder decide if the .45 ammunition found in the truck belonged to Mr. Francois. That evidence was not determinative, but evidence need not be determinative by itself in order for it to be relevant. Relevant evidence makes the existence of a fact more likely than if that evidence was not present. Md. Rule 5-401. The jury was not being asked to convict Mr. Francois of a crime because the text messages showed he was the sort of person who committed crimes. The jury was being asked to convict Mr. Francois of possessing firearms and ammunition because an eyewitness testified that he possessed firearms and ammunition. That testimony was corroborated by text messages showing that in the days and weeks preceding the incident, he possessed firearms and ammunition.

The amount of time between the messages and the allegation of possession goes to its weight. That period could be so long that the relevance was too attenuated to overcome even a tiny risk of unfair prejudice. Here, however, the messages were between six months and six days old at the time of the incident. The relevance of the messages was not so attenuated.

The evidence was prejudicial in the sense that it helped the State prove its case. That is why the State presented it. "Unfair" prejudice, in this case, means that the evidence would have tended to cause the jury to convict Mr. Francois not based on the strength of the State's case, but because of an inflamed and irrational response to learning that Mr. Francois enjoyed visiting the firing range with a friend. Given the fairly mild nature of the evidence, the risk of <u>unfair</u> prejudice is slight. The court, therefore, did not abuse its

16

discretion when determining that the probative value of the evidence outweighed the risk of unfair prejudice. Mr. Francois's second appellate contention is denied.

## III.

### The prosecutor's rebuttal testimony was proper, and any error was harmless.

Mr. Francois's final contention is that the trial court erred when it failed to sustain his objection to the prosecutor's closing remarks. During her argument, the prosecutor read a portion of Mr. Francois's text message exchanged with another individual:

"Defendant says 'LOL. Kill.' I suggest to you that means, 'LOL. Yes, I'm up for it.'"

The Appellant argues that this constitutes an improper argument, as it argues facts not in evidence; the use of the word "kill" in Mr. Francois's text messages is "outside the common vernacular" and therefore only a witness with the appropriate knowledge was in a position to define the term as used in Mr. Francois's texts.

The State counters that by couching her interpretation of the word "kill" with the phrase "I suggest to you . . . ," the prosecutor was not presenting outside evidence, but was simply arguing a reasonable inference from the evidence based on the context of the text messages.

In the admitted messages, Mr. Francois on one other occasion also uses the word "kill" in a context that could, perhaps, be interpreted to mean agreement. However – unlike "LOL," for example – this understanding of the word can only be gleaned from context; it

17

is not a standard usage of the word "kill" and there was no trial testimony as to its meaning in this context.

While the distinction is subtle, in this case, the prosecutor was not presenting facts not in evidence. She was, rather, arguing to the jury how it should interpret the evidence before it. The phrase "I suggest to you" made it clear that the prosecutor was not revealing new evidence, but rather arguing for a particular context-based interpretation of an otherwise ambiguous phrase.

Parties are entitled to argue "'all reasonable and legitimate inferences which may be drawn from the facts in evidence[.]'" *Smith v. State*, 388 Md. 468, 488 (2005) (quoting *Henry v. State*, 324 Md. 204, 230 (1991)). Prosecutors are allowed to make any argument "that is warranted by the evidence or inferences reasonably drawn therefrom." *Degren v. State*, 352 Md. 400, 430 (1999). They may not, however, introduce facts not already in evidence. *Lee v. State*, 405 Md. 148, 166 (2008). Toward that end, jurors are instructed – and were instructed in this case – that the arguments of counsel are not themselves evidence, and that they should rely on their own interpretation of the evidence when determining facts. Maryland State Bar Association, *Md. Pattern Jury Instructions - Criminal* 3:00.

Nothing about the prosecutor's remark was meant to serve as the introduction of new, incompetent evidence during closing argument. Nor would any reasonable juror have interpreted it as such. It was a proper argument from inferences that could – but need not be – drawn from the evidence admitted at trial. Accordingly, the judge did not err in overruling the defense objection to the remark.

18

Moreover, even if improper, the remark does not warrant reversal. This was a single remark about a single word in two text messages – a word whose general intent was clear from the contexts in which it was used. The interpretation of this word, in and of itself, would not change how a rational jury would understand the texts as a whole, nor would the suggestion that it indicated agreement in any way adversely affect the jury's ability to properly interpret and weigh the evidence. "'[R]eversal is only required where it appears that the remarks of the prosecutor actually misled the jury or were likely to have misled or influenced the jury to the prejudice of the accused.'" *Shelton v. State*, 207 Md. App. 363, 387 (2012) (quoting *Spain v. State*, 386 Md. 145, 158 (2005)).

Therefore, the trial court did not abuse its discretion in overruling the defense objection, and any error was harmless. The convictions are affirmed.

> **JUDGMENTS OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

19